# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **RYAN D. BURCH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:12-CV-1778-VEH** |
| | ) |
| **COCA-COLA BOTTLING** | ) |
| **COMPANY UNITED, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION AND PROCEDURAL HISTORY

This employment discrimination case was filed on May 3, 2012, by the plaintiff, Ryan D. Burch, against the defendant, Coca-Cola Bottling Company United, Inc. The complaint alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e*, et seq.*, and 42 U.S.C. § 1981. (Count One). It also alleges retaliation in violation of those same laws. (Count Two). Finally, the complaint alleges that the defendant is liable for the Alabama state law claim of negligent supervision, hiring, and training. (Count Three). All counts arise out of the plaintiff's employment with and eventual termination by the defendant.

On August 1, 2013, the defendant moved for summary judgment on all counts.

(Doc. 31). On January 16, 2014, the magistrate issued a report and recommendation and recommended

> that Coke United's motion for summary judgment against Burch with respect to his claims of race discrimination be GRANTED and Burch's race discrimination claims be DISMISSED WITH PREJUDICE. Because plaintiff has abandoned his state-law claim by failing to address it, and because there is no evidence to support the negligence claim set forth in the complaint, the magistrate judge further recommends that the motion be GRANTED as to the state-law negligence claim, and that that claim be DISMISSED WITH PREJUDICE. Because the plaintiff has failed to establish a causal link between any Title VII or § 1981 protected activities and his termination of employment, the magistrate judge RECOMMENDS that the defendant's motion for summary judgment as to plaintiff's retaliation claims be GRANTED, only with respect to plaintiff's termination claims, which should be DISMISSED WITH PREJUDICE. As to the motion for summary judgment on the remaining claims that plaintiff was suspended for two days in retaliation for having complained of race discrimination, the court RECOMMENDS that the motion for summary judgment be GRANTED as to plaintiff's Title VII retaliation claim, as time-barred, but DENIED as to plaintiff's § 1981 claim.

(Doc. 50 at 29-30). Both the plaintiff and the defendant have filed objections to the recommendation. (Docs. 58 and 59). Those objections are now before this court.

For the reasons stated herein, the magistrate's recommendation is **ADOPTED** to the extent that it is consistent with this memorandum opinion, and to the extent to which no objections were made. To the extent that the objections are inconsistent with this opinion, they are **OVERRULED**. The magistrate's conclusion that questions of fact remain as to whether the plaintiff's suspension was in retaliation for his

complaints of racial discrimination is not adopted. The defendant's objection to that conclusion is **SUSTAINED**. Summary Judgment will be **GRANTED** to the defendant by separate order.

## II.   STANDARD

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts

3

showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce

4

"significant, probative *evidence* demonstrating the existence of a triable issue of fact."
*Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## B.    District Court Review of Report and Recommendation

After conducting a "careful and complete" review of the findings and

recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982), *overruled on other grounds by Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)).[1] The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citing H.R. Rep. No. 94-1609, 94th Cong., 2nd Sess., reprinted in 1976 U.S. Code Cong. & Admin. News 6162, 6163). In contrast, those portions of the R&R to which no objection is

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 Fed. App'x. 781, 784 (11th Cir. 2006).[2]

"Neither the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)). It is incumbent upon the parties to timely raise any objections that they may have regarding a magistrate judge's findings contained in a report and recommendation, as the failure to do so subsequently waives or abandons the issue, even if such matter was presented at the magistrate judge level. *See*, *e.g.*, *United States v. Pilati*, 627 F.3d 1360 at 1365 (11th Cir. 2010) ("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, he did not raise this issue in his appeal to the district court. Thus, this argument has been waived or

---

[2] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to *de novo* review).

abandoned by his failure to raise it on appeal to the district court."). However, the district judge has discretion to consider <u>or</u> to decline to consider arguments that were not raised before the magistrate judge. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006); *see also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Thus, we answer the question left open in *Stephens* and hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410. Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Williams*, 557 F.3d at 1292 (internal quotation marks omitted) (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## II.   FACTS

### A.   <u>Unobjected-to Facts</u>

The court finds that the following facts, which are set out in the

recommendation, and to which no objection has been made, are not clearly erroneous:

The plaintiff, Ryan Burch, is African American. He was employed by defendant Coca-Cola Bottling Company United, Inc., ("Coke United") in 2007 as a route salesman. He was responsible for servicing vending machines by stocking them with food and drink products, collecting money from the machines, filling the machines with coins for making change, and keeping the machines clean. He would report to the Coke United plant at about 6:00 a.m. to clock in, and would then leave in a company truck to service the vending machines along an assigned route. He would return to the Coke United plant after servicing the machines, turn in the money collected from the machines, and restock the truck for the next day's service. He would clock out after restocking his truck in the afternoon. He was paid for the time during which he was clocked in, minus 30 minutes per day, which was deducted for a lunch break. His pay was supplemented by a commission made on the sales from the machines he serviced.

Burch was first assigned to Route 35. He was trained by Justin DeMarco, a senior salesman, who is Caucasian, and was supervised by Mark Clinkscales, an area manager, who also is Caucasian. Clinkscales was supervised by David Lane, the operations manager. Lane reported to the general manager, Frank Park. Both Park and Lane also are Caucasian.

While working at Coke United, Burch filed an employment discrimination action against his former employer, PJ Cheese, in August 2009. Burch did not discuss it with anyone at Coke United except his aunt, who worked as benefits manager at the plant. Other employees, including Lane and Park, however, knew about the lawsuit.

While working on Route 35, prior to 2010, Burch did not receive any disciplinary actions at Coke United. Route 35 was discontinued in 2009, and Burch was reassigned to Route 29, which included vending machines at Mountain Brook High School. On January 5, 2010, Burch was given a verbal warning for failure to properly service the high school vending machines. Burch said he let the stock in the machines "dwindle down" because the school was going to be closed for Christmas holidays.

Burch said Clinkscales told him to let the supply dwindle so the products would not be stale, and that, because the school was closed, he could not replenish the supply before he was disciplined on January 5, 2010. When Burch protested the verbal warning, Clinkscales told him that Lane, the operations manager, had instructed him to issue the verbal warning, even though Clinkscales acknowledged to plaintiff that he had instructed plaintiff to allow the supply to dwindle during the holidays.

At some time after 2009 (a more specific time frame is not clear), Burch complained to Taraysa Smith, an employee in Coke United's human resources office, who is African American, about a meeting he attended that was led by David Lane. Burch testified that the meeting was "pretty much all blacks," and that he "didn't remember" any Caucasian salesmen at the meeting. . . Burch told Smith that Lane said he knew that people in the room were "lining their pockets." Plaintiff said the meeting was insulting and that he told Smith "I haven't stole from them and I don't plan on doing it." He did not tell Smith that he believed the meeting or remarks were racially motivated, only that it was insulting.

In February 2010, Burch and another African American route salesman, Rod Richardson, were disciplined with written warnings for arriving late to work in the morning. Burch complained to Smith that he thought he was being disciplined because of his race, and that white employees who arrived later than he had were not disciplined. Smith and Coke United's human resources manager, Stacye Collier, who is Caucasian, investigated Burch's complaint of race discrimination. Smith determined that Clinkscales was excusing the tardies from workers who called in prior to being late, but was not excusing the tardies of workers who did not call in. Smith and Collier apparently did not determine whether the excuses were given only to one race; but neither is there any evidence that the tardy policy was applied on any basis other than whether the employee called in advance of the late arrival. As a result of the investigation, the disciplinary warnings were ultimately removed from Burch's file, and from the other employee's file, and Clinkscales and other area managers were instructed to let all employees know that they would be considered tardy if they were late, regardless of whether they called in advance.

In early 2010, Route 29 was eliminated and Burch was reassigned to Route 28, which consisted primarily of vending machines at the ACIPCO plant. The machines on Route 29 were divided among five other established routes. Route 28 was considered a difficult and dirty route, with over 100 machines to be serviced. Some previous salesmen assigned to Route 28 resigned. Burch was trained on the new route by senior salesman Bobby King, an African American. King trained him for about a week, but never showed him where every machine at ACIPCO was located. On the new route, Burch was supervised by area manager Corey Pounders, a Caucasian. Burch sought help finding the machines from another senior salesman, Eugene Martin, but Martin refused to go to ACIPCO to help. Burch frequently complained to Pounders that he could not find all of the machines at ACIPCO, and on one occasion, Pounders told him to call another senior salesman, Ricky Bynum, who provided some assistance in locating the machines. Other times, Pounders refused to help, and once laughed at Burch for asking for help.

On March 18, 2010, Burch was given a written warning for unacceptable performance, related to his previous route, Route 29. The warning alleged that the route salesmen who took over the machines that had been on Route 29 after plaintiff was reassigned had discovered that the money in the machines was short by $345.42. Burch protested to the human resources department that, once the route was reassigned, he no longer had keys and was not able to verify the amount of money in the machines. Clinkscales testified that it would be possible for another Coke United employee with the keys to have taken the money. After the shortage was discovered, a meeting was held on April 12, 2010 with Collier and Smith from human resources; Park, general manager; and Lane, operations manager, to discuss Burch's performance. It was determined that, although the February warnings for tardiness would be removed from plaintiff's file, the March disciplinary warning for money shortages on the Route 29 machines would stand.

Later that same day, April 12, 2010, Burch met with Pounders, Lane, and Park. No one from human resources was present. Pounders proposed suspending Burch for two days because he failed to service all machines assigned for serving on Route 28. After Burch complained that he did not know where all of the machines were, Pounders pointed to

service records indicating that plaintiff previously had serviced machines he now claimed he did not know where they were located. Burch told Park that he had discussed with HR the lack of help finding the machines, at which Park "really got mad" and told him that he was going to suspend him for two days, effective April 13 and 14, 2010. (Doc. 33-1, Plaintiff's Depo., p. 108).

Burch continued to work after the suspension without incident until October 2010. On October 15, 2010, Burch completed his route and returned to the Coke United plant. He left with his girlfriend in her car, drove her to her workplace, and then returned to the Coke United plant to complete his duties. He was gone less than 10 minutes. He did not clock out before leaving, and did not tell any supervisor that he was going to leave. While he was gone, Pounders tried to find Burch. An hour or two after Burch returned, Pounders asked Burch where he had been. Burch told him that he did not know what he was talking about. Pounders and Lane looked at plant video cameras, determined that Burch had driven off the parking lot, and then asked Burch directly if he had left the premises. Burch admitted that he had driven his girlfriend to work. Park, after meeting with Smith and Collier, and after again discussing with Burch why he left the premises, decided to terminate Burch's employment. He told Burch that he was being terminated for leaving the premises without permission from his supervisor. A provision of the employee handbook states that leaving the workplace "premises during work hours without the permission of the supervisor" is grounds for discipline up to and including termination. Plaintiff had a copy of the handbook, but had never read it. . . . Lane recommended that Burch be terminated, and Park made the final decision to end Burch's employment.

(Doc. 50 at 4-8).

In setting out the facts of this case, the magistrate also found: "No other Coke United route salesman has been terminated for leaving the premises *without permission*." (Doc. 50 at 8) (emphasis in original). In a footnote to that sentence, the

magistrate wrote:

> Although plaintiff has offered evidence that other route salesmen left the Coke United premises for lunch, see doc. 33-4, Smith Depo., at pp. 34-44; doc. 33-1, Plainitff's Depo., pp. 1530154, 165-166; doc. 43-4, Mitchell Decl., p.3; doc. 432, Richardson Decl., p. 2, none of the evidence establishes that they did not either without permission or with the knowledge of their supervisors. Rod Richardson's declaration is the closest, saying that route salesmen were "allowed" to leave for lunch without permission, but he does not say that any supervisor or person with appropriate authority told him he was "allowed" to do so, contrary to the explicit statement in the employee handbook.

## B.   Objections to Magistrate's Statement of Facts

The plaintiff objects to several parts of the magistrate's statement of facts.[3] They are addressed here using the numbering from his Amended and Substituted Objections to the Report and Recommendation of the Magistrate. (Doc. 58).

8.    The plaintiff objects to the magistrate's finding that "there is no evidence of any other route salesman leaving the premises without permission." Burch argues that there is evidence that other salesmen left the premises without permission on the basis of testimony by Mark Clinkscales, Burch's first supervisor, who said that route salesmen never called him, "under any circumstance," to ask for "approval to come and go from the plant." (Doc. 43-5 at 60). Plaintiff alleges that a "reasonable inference" from this testimony is that route salesmen were either unaware of the need

---

[3] The Defendant did not object to any facts as found by the magistrate.

to get permission, or that the rule against leaving the premises without permission was unenforced. (Doc. 58 at 25).

To support his suggested "reasonable inferences," the plaintiff seems to be relying on an evidentiarily unsupported assumption that some employees must have left the premises during the work day. However, Clinkscales testified in the same deposition that he never saw his salesmen leave the plant for lunch, and that he had no knowledge of whether salesmen supervised by other managers were leaving without permission.[4] The plaintiff has not offered any evidence directly stating or indirectly suggesting that other salesmen were leaving without permission, and the Court will not simply speculate that this was the case.

11. This objection alleges that the magistrate failed to include in his statement of facts that when the plaintiff met with Taraysa Smith at some time between March 18 and April 12, 2010, he complained that Coke United employees were retaliating against him for his January 2010 and February 11, 2010 complaints about race discrimination. The only support cited by plaintiff is his own brief in opposition to

---

[4] Clinkscales did say that his salesmen never asked him for permission to leave the plant to go on their routes. (Doc. 59) However, the argument, which plaintiff has suggested at some points throughout this litigation, that this shows the policy against leaving without permission was unenforced is untenable. The primary tasks of the route salesmen, delivering drinks and maintaining the dispensing machines, required them to leave the plant every morning. It would be reasonable to think that they would not need daily permission to do their jobs.

summary judgment. However, "statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).

Plaintiff does, however, cite portions of his deposition where he testified that he complained to Smith after he had trouble getting his supervisors to tell him where all the machines were on Route 28. This testimony does not specifically state that he alleged retaliation then, but it does state that he complained that his supervisors were "just trying to set [him] up for termination" (doc. 33-1 at 79), and that he alleged race discrimination. *Id*. at 158.

The cited testimony is only relevant as evidence that Plaintiff's April 12, 2010 suspension was retaliatory. However, as the Court will discuss in III.A of this memorandum, the plaintiff's retaliation claim fails on other grounds, and so this objection is immaterial.

21.    Plaintiff objects to the magistrate's finding that at least two white salesmen were present at the meeting in which David Lane accused a group of route salesmen of theft. Instead, plaintiff argues that "Lane had only called black route salesmen to his meeting about theft or perhaps he had brought in a token white route salesmen." The evidence given by plaintiff is as follows.

Plaintiff testified that in the meeting, "It was pretty much just all blacks in there, I don't remember any whites in there." (Doc. 33-1 at 77). Richardson's affidavit stated

that the meeting had "almost exclusively African American route salesmen." (Doc. 43-2 at 5). Mitchell's affidavit said that "almost everyone there, except maybe two whites, were African American route salesmen." (Doc. 43-3 at 4). Plaintiff's qualifier "pretty much all" introduces vagueness, and Richardson's "almost exclusively" clearly indicates that at least some white salesmen were present at the meeting. The most precise description comes from Mitchell: "maybe two whites." The Court agrees that the magistrate was incorrect to say "at least two," and instead should have said, "one other witness proffered by the plaintiff testified that there may have been two white salesmen present." However, as this difference is not material, the plaintiff's objection is not relevant.

## III.   ANALYSIS

### A.   <u>Defendant's Objection to the Recommendation</u>

Coke United objects to the Magistrate Judge's recommendation that summary judgment be denied on the plaintiff's claim that his two-day suspension in April 2010 was in retaliation for complaining about racial discrimination. (Doc. 54 at 1). Coke United objects to the magistrate's statement that,

> It must be recalled that earlier *that same day* [April 12, 2010], Park and Lane met with HR representatives, who explained that plaintiff's earlier disciplinary for tardiness amounted to racial discrimination. It was only when plaintiff mentioned his HR protests that Park "got really mad" and instructed Pounders to write-up a two-day suspension for plaintiff. (Doc. 50 at 28)

Coke United contends that this analysis is mistaken because "there is no evidence that a Human Resources representative told Park that the plaintiff's earlier discipline for tardiness amounted to race discrimination." (Doc. 54 at 3).

The Court has found no evidence to support the magistrate's above statement that on April 12, 2010, Park and Lane were told by Human Resources representatives that "the plaintiff's earlier disciplinary for tardiness amounted to racial discrimination." The Court must therefore determine whether there is any evidence that Park or Lane had learned of plaintiff's charges of racial discrimination before they made the decision to suspend him.

In his deposition, the plaintiff answered "yes" to the questions "Did you allege race discrimination in your complaints?" and, "Did those complaints involve David Lane?" (Doc. 33-1 at 158). The context of those questions leaves some uncertainty as to which complaints the plaintiff was describing, but the preceding testimony (*id*. at 156-57) indicates that the plaintiff was complaining about the lack of training that he received when he was reassigned to Route 28. Additionally, the record shows that the plaintiff did allege racial discrimination to human resources in February 2010 after receiving a disciplinary write-up for tardiness. (Doc. 33-4 at 23). Therefore, there is evidence that the plaintiff had made allegations of racial discrimination to Human Resources before the decision was made to suspend him.

However, the Court has found <u>no</u> evidence that Park or Lane, the two Coke United employees involved in the decision to suspend the plaintiff, were <u>aware</u> at the time the suspension decision was made that he had ever complained of racial discrimination to Human Resources. The plaintiff testified that he told Park, during the April 12, 2010, meeting that he had contacted HR "and told them that [he] couldn't get help." (Doc. 33-1 at 103). However, the plaintiff has <u>not</u> said that he mentioned his racial discriminations claims to Park or Lane. Lane testified that he never heard of the plaintiff's complaints to Human Resources of racial discrimination (doc. 33-3 at 100-01), and that HR "never let [him] know" of discrimination allegations filed against him by any employees (*id*. at 101-02). Park testified that he was aware that the plaintiff had complained to HR about the tardy write-ups on the basis of unfairness, but did not recall ever hearing that the plaintiff had alleged racial discrimination. (Doc. 33-8 at 93-94). The investigation by Taraysa Smith into the write-ups did not find racial discrimination, but merely inconsistency on the basis of whether a salesmen called in to advise a supervisor that he would be tardy (doc. 33-4 at 18-19), and there is no evidence that Smith told Lane or Park that the plaintiff had complained of racial discrimination.

Since there is no evidence that the employees who made the decision to suspend the plaintiff were aware that he had made allegations of racial discrimination, it is not

possible for a reasonable jury to find that the decision to suspend him was in retaliation for these allegations.

Therefore, the Court finds that the magistrate erred in denying defendant's motion for summary judgment on plaintiff's retaliation claim relating to his suspension. The defendant's objection is **SUSTAINED**.

### B.    Plaintiff's Objections to the Recommendation

Plaintiff makes a large number of objections to the magistrate's recommendation. They will be discussed below using the numbering from his Amended and Substituted Objections to the Report and Recommendation of the Magistrate.

1.    The plaintiff objected to the magistrate's failure to consider a retaliatory hostile work environment. However, the plaintiff's retaliation claims alleged only that he was terminated and given disciplinary warnings. (Doc. 1 at 15). The plaintiff never filed an amended complaint adding a claim of a retaliatory work environment. The magistrate could not be in error for failing to consider a nonexistent claim, and so this objection is rejected.

2.    This objection incorrectly states that the magistrate found the plaintiff's suspension to be retaliatory. The objection goes on to say that, on that basis, the judge should also have found that relying on the previous write-up (on April 12, 2010) as

a ground for termination was pretextual.

However, in his recommendation, the magistrate found that "plaintiff has shown circumstances from which a reasonable jury could determine that the suspension was for retaliation, not legitimate disciplinary reasons." (Doc. 50 at 28). This did not amount to deciding the retaliation claim in favor of the plaintiff, but merely finding that there were triable issues of material fact remaining for the claim. Since the objection's premise is incorrect, the conclusion argued by the plaintiff does not have support. Further, for the reasons set out *supra*, this Court finds that the magistrate erred in denying defendant's motion for summary judgment on plaintiff's retaliation claims relating to his suspension.

3.      Plaintiff alleges that the magistrate failed to "consider the low probability, absent illegal discrimination and retaliation, of all the following incidents occurring," and lists ten pages of factual allegations concerning the case. The plaintiff has not provided a "specific written objection," as required by FED. R. CIV. PR. 72(b)(2). Rather, this is merely a "conclusive or general objection," which the Court will not consider. *Nettles*, 677 F.2d at 410 n.8. The plaintiff is required to explain why he believes each piece of evidence is material to a claim, not merely make factual allegations and leave the court to guess why each is relevant.

4.      This objection argues that the magistrate failed to consider an Eleventh Circuit

case stating that three months is the limit of temporal proximity between protected activity and retaliation. *Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011). Therefore, the plaintiff argues, the magistrate should have allowed several other events to be considered as proof of retaliation: his March 11, 2010 reassignment to Route 28, his write-up on March 18, 2010, his suspension on April 12, 2010, and his termination on October 18, 2010. All of these, plaintiff alleges, took place within three months of a protected activity.

The plaintiff is correct in his summary of *Henderson*. However, his objection is not relevant to the magistrate's articulated reasons for denying his retaliation claims on the basis of these incidents. The magistrate did not base his decisions on the length of time between the plaintiff's protected activities and the defendant's adverse employment actions. Accordingly, this objection is without merit.

First, plaintiff contends that his reassignment to Route 28 on March 11, 2010, and his disciplinary warning on March 18, 2010 were retaliations for a race discrimination complaint in early January. However, there is no evidence establishing that he ever complained of race discrimination at that time. When discussing the incident in his deposition, the plaintiff does not say that he alleged racial discrimination, only that he found Lane's accusation "insulting." (Doc. 33-1 at 77-78).

Second, plaintiff contends that his suspension on April 12, 2010, can be linked

21

to his complaint of race discrimination on February 11, 2010. However, the magistrate actually determined that the plaintiff "provided sufficient evidence to establish a *prima facie* showing of retaliation with respect to the two-day suspension he received in April 2010." (Doc. 50 at 27). Thus, this objection is erroneous.[5]

Third, the plaintiff contends that, because his termination came three months after Coke United received a subpoena from his prior employer and two months after Coke United received another letter concerning that subpoena, his termination could be considered retaliation for Coke United's having learned of the matter. The undisputed facts show that Lane recommended that the plaintiff be fired and Park made the final decision to terminate him. Park has testified that he had no knowledge of the plaintiff's lawsuit or EEOC charge against his former employer, nor awareness of the subpoena sent to Coke United until after the plaintiff was terminated by Coke United. Lane testified that he had heard in 2007 about the plaintiff's lawsuit against the plaintiff's former employer, but had no knowledge of the subpoena sent to Coke United in 2010 before the plaintiff was fired. (Doc 33-8 at 30). Plaintiff has provided evidence only that the subpoena was sent to Coke United, but no evidence to

---

[5] Further, for the reasons set out *supra*, this Court finds that the magistrate erred in denying defendant's motion for summary judgment on plaintiff's retaliation claims relating to his suspension.

contradict Lane's and Park's respective testimonies that they did not know of the subpoena when the plaintiff was terminated.

5.      This objection restates the previous objection's contention that, on the basis of temporal proximity, the plaintiff's termination could be considered retaliation for Coke United's having learned of the subpoena in his lawsuit against his prior employer. It is rejected on the basis of the same reasoning in the last paragraph of the court's response to Objection 4; there is no evidence that Lane and Park were aware of the subpoena at the time when the decision to terminate the plaintiff was made, so their decision cannot be construed as retaliation. Further, the time elapsed between Lane's knowledge of the plaintiff's lawsuit (2007) and the plaintiff's termination (2010) is too long to establish retaliation. *Henderson*, 442. F. App'x at 506.

6.      Plaintiff argues that,

> "the magistrate did not consider testimony that there was no real requirement for route salesmen to report to their supervisor when they arrived back at the plant during the work day, no requirement for route salesmen to report to their supervisor when they were leaving again during the work day, and there was no requirement for route salesmen to inform their supervisor they were leaving the plant at the end of the day."

(Doc. 58 at 21). Plaintiff then argues that the rule in Coke United's Handbook against employees leaving the work premises during working hours without approval from a supervisor was never enforced, was not mentioned to the route salesmen, and was inconsistent with other practices at the company. On these facts, plaintiff argues, the

23

policy that forbade salesmen to leave the plant during the day — the reason given for his termination — was "not really a policy in effect at Coke United." (*Id*. at 24).

The plaintiff does not explain the way in which this argument is relevant to a claim in the case. The court assumes he is saying that the defendant's stated reason for his termination was pretextual. However, as the magistrate correctly noted, the plaintiff failed to establish a *prima facie* showing of discrimination (doc. 50 at p. 19) and "he is unable to show that [Coke United's] articulated reasons for termination ... were mere pretext." (*Id*. at 22).

7.    This objection cites many pieces of evidence and asserts that the magistrate did not consider these as "other indicia of race discrimination and of a retaliatory work environment." (Doc. 58 at 26). This objection has the same flaw as plaintiff's Objection 3; it does not challenge a specific finding, but merely makes a conclusive allegation that the magistrate failed to take into account a whole host of evidence.

Additionally, as to retaliatory hostile work environment, as the Court states in its discussion of plaintiff's Objection 1, the plaintiff never made a claim of retaliatory hostile work environment. The magistrate was not in error for failing to consider a claim that was never asserted.

9.    The plaintiff objects to the recommendation's determination that all claims

before May 3, 2010, are time-barred.[6] The plaintiff argues that "he can use the previous incidences of retaliation prior to May 3, 2010 in support, because one instance of discrimination, his October 18, 2010 termination, occurred within one hundred and eighty days of the filing of his EEOC charge on November 1, 2010." The plaintiff cites *Faircloth v. Herkel Investments, Inc.*, 2012 WL 2119083 (M.D. Ga. 2012), *aff'd*, 514 F. App'x 848 (11th Cir. 2013), but does not give any proposition from this case or even a pinpoint cite. As written, this objection does not provide any argument in opposition to the magistrate's recommendation, but merely states a conclusion. The objection is overruled.

10.    The plaintiff objects to the magistrate's statement (doc. 50 at 32) that the plaintiff did not allege racial discrimination when he complained to Coke United's human resources office about a meeting prior to 2009 in which Lane accused route salesmen of stealing from the company. The plaintiff refers to two portions of his deposition (doc. 33-1) to establish that he did allege racial discrimination with regard to that meeting, but the cited evidence does not support this allegation.

In the first portion of this evidence, the plaintiff does not say anything about racial discrimination, only that he found Lane's accusation "insulting." (*Id.* at 77-78).

---

[6]The Court notes that the caption for this objection does not exactly correspond with the body of the objection. The Court has attempted to construe the whole objection as coherent.

In the second portion, the plaintiff answered "yes" to the questions "Did you allege race discrimination in your complaints?" and, "Did those complaints involve David Lane?" (*Id*. at 158). However, neither these questions nor the surrounding testimony indicate that those complaints were made in response to the meeting where Lane made accusations of theft. The preceding testimony (*id*. at 156-57) seems to indicate that these complaints were the ones the plaintiff made about the lack of training that he received when he was reassigned to Route 28. Therefore, the cited evidence does not establish that the plaintiff complained about race discrimination regarding the meeting led by David Lane.

12.     This objection alleges that the magistrate did not "properly consider several other instances of protected activity." The magistrate did, in fact, consider those other instances, and he explained why he did not judge them to be protected activities. (Doc. 50 at 24, fn. 1). The plaintiff refers to three different instances that he contends are protected activities. He argues that he had made a complaint of race discrimination to Coke United's human resources department in January 2010 regarding Lane's accusing route salesmen of theft. As the Court discussed in response to Objection 10, the plaintiff's cited evidence does not establish that he complained of race discrimination in that meeting.

The plaintiff asserts that the second and third events, his complaints of

retaliation to human resources between March 18 and April 12, 2010, and Coke United's receipt of letters regarding the subpoena from the plaintiff's former employer, should also be considered protected activity. However, he does not provide any argument for this, merely citing to paragraphs from Objection 3, which themselves merely make factual allegations. This portion of the objection fails to be anything more than a "general or conclusive" objection. It is overruled.

13.     The plaintiff next argues that

>   there was close temporal proximity showing causality between Lane and Park learned of the plaintiff's lawsuit against his former employer and the decision to terminate his employment by Coke United, and close temporal proximity between the disciplinary decisions made in January, February, March, and April and Burch's complaints of race discrimination, and retaliation.

The plaintiff then simply refers to portions of his 11-pages-long third objection to "show" six instances of temporal proximity between an action by the plaintiff and an action by Coke United. This objection is not material: the magistrate did not limit any of the plaintiff's grounds for a retaliation claim on the basis of too much time between the events. Since a lack of temporal proximity was not a ground for his recommendations, this objection fails to give a relevant argument.

14.     The plaintiff objects to the magistrate's statement that Park was Coke United's decisionmaker. The plaintiff argues that Lane was the true decisionmaker, and Park was a "catspaw." The testimony by Park cited by the plaintiff supports the conclusion

that Park terminated the plaintiff after Lane recommended his termination, but it does not give any basis for the plaintiff's contention that Park always followed Lane's recommendations. The plaintiff also offers testimony by Stacye Collier, Coke United's employee relations manager, that she did not know if Park ever rejected "a decision" by Lane. (Doc. 33-7 at 52). However, it is clear from the preceding questions in Collier's deposition that, in this answer, she was speaking specifically of the decision to fill an area manager vacancy. (*Id.* at 51). Further, her lack of knowledge does not establish the unknown fact.

The only evidence on point that plaintiff submits is Coke United's response to the plaintiff's EEOC charge, where Coke United said that "the decision to terminate him was made by Corey Pounders and David Lane." (Doc. 45-15 at 4). This is in tension with the magistrate's finding that Park made the final decision on termination, but even assuming that Lane played the main role in deciding to terminate the plaintiff, this issue is not material. Plaintiff has not given sufficient evidence to support a finding that his departure from the premises without permission was only a pretext, rather than the real reason for firing him.

15.   The plaintiff attacks the magistrate's conclusion that the plaintiff could not produce a comparator "with respect to the disciplinary treatment he received." (Doc. 50 at 16). The plaintiff points to testimony regarding two white men who did not

receive warnings for being tardy. However, this is insufficient to establish that these men were comparators for the plaintiff's race discrimination claim. The plaintiff's disciplinary warnings for tardiness were rescinded by Coke United after he complained to the human resources department. Coke United determined that Clinkscales was inconsistently applying the company's policy that all late arrivals receive a written warning by declining to give warnings to salesmen who called in to report that they would be tardy. The plaintiff has not produced evidence indicating that Clinkscales actually discriminated on the basis of race in his tardy warnings. Therefore, simply showing that two white employees did not receive warnings for being tardy is insufficient to make them comparators for the plaintiff's racial discrimination claim.

16.    Plaintiff objects that the magistrate "erred in finding that there was insufficient evidence of racial animus by Coke United." The rest of the objection recites a list of factual allegations, with the only supporting cites made to plaintiff's previous briefs, which are not evidence, and to other portions of his objections, which for the most part also cite only his previous brief.

However, the Court will still consider each incident plaintiff alleges demonstrates racial discrimination. First, the plaintiff mentions the meeting in which Lane accused a group of salesmen of theft. The magistrate correctly concluded that

because at least two white salesmen were present at the meeting, and because the plaintiff did not allege racial discrimination in his complaints to Coke United's human resources office about the meeting, this incident does not serve as circumstantial evidence of racial discrimination.

Second, the plaintiff refers to the differing use of disciplinary write-ups of route salesmen showing up late to work. As the discussion of the previous objection stated, these warnings were rescinded, and do not show discriminatory animus, and so are not relevant. Third, plaintiff also argues that Coke United's decision to rescind those write-ups indicates race discrimination. However, there is no evidence to suggest that Clinkscales had been inconsistently applying the company's tardy policy in a racially discriminatory manner, rather than, as Coke United's investigation determined, that Clinkscales had been excusing tardies when a worker called in to notify him that they would be late, but not excusing tardies if a worker failed to call — a distinction that is not race-based.

17.    This objection argues that the magistrate erred in finding *sua sponte* that several statements attributed to senior salesman Bobby King should be excluded as hearsay. Anthony Mitchell has testified that King told him that Pounders and Martin wanted King to report the plaintiff as incompetent. Hearsay is a statement that: (1) the declarant makes outside of the current proceeding or hearing; and (2) a party offers

in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Since King has not testified as to this statement, his statement meets the first requirement for hearsay. The second requirement is also met, as the plaintiff is clearly using it to show the truth of the matter asserted: that Pounders and Martin asked King to report the plaintiff as incompetent. However, the plaintiff makes six arguments for why the statements are admissible.

(1)     Plaintiff argues that the statements can be attributed to Coke United because King, as a senior route salesman, was a member of management. First, plaintiff puts forth "vicarious liability" as a ground for attributing this statement to Coke United. Vicarious liability is a tort theory, and is not a part of the law of evidence. Second, plaintiff argues for the statement by an opposing party exception to hearsay. Fed. R. Evid. 801(d). However, the plaintiff cannot satisfy any of the subparts of the second requirement for this exception. King was not authorized by Coke United to make a statement on this subject, so he could not state it in a "representative capacity." *Id*. at (A). The statement was not "on a matter within the scope" of his employment, because Coke United did not employ him to file false reports about Burch. *Id*. at (D). King was not in a conspiracy, and so the coconspirator subpart is not applicable. *Id*. at (E).

(2)     Plaintiff asserts that King's statement has relevancy apart from the truth of the matter asserted, specifically "to show the reason for his investigation of the vending machines on Burch's ACIPCO route 28." (Doc. 58 at 34). However, this matter is not in dispute, nor has plaintiff explained how King's reasons for investigating the vending machines are relevant to any of the claims in the case.

(3)     Plaintiff asserts that because King could be called as a witness, and Mitchell could be called for purposes of impeachment, the statements should be admitted. This argument has no basis in law.

(4)     Plaintiff says that King's statements count as a present sense impression. Under this exception, the court can admit "a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). However, the statements attributed to the declarant (King) had nothing to do with Pounder and Martin's desires, not anything he observed with his senses.

(5)     The statement cannot come in as showing the state of mind on the listener, because Mitchell's state of mind is not relevant to the case.

(6)     Plaintiff also claims that the statements fits into the "residual exception" of Rule 808 for hearsay. However, this requires "circumstantial guarantees of trustworthiness" equivalent to those found in Rule 803 or 804. The plaintiff merely states that Coke United was made aware of the statement by Mitchell, thus giving Coke United "a fair opportunity to prepare to meet it." (Doc. 58 at 37). However, informing an opposing party of an intention to rely on hearsay does not give any guarantee of the statement's trustworthiness, and so the residual exception to hearsay does not apply here.

The magistrate's finding of hearsay is correct, and this objection is rejected.

18.     Plaintiff argues that the magistrate erred in ruling that the February warning to the plaintiff for being tardy "cannot be attributed to the employer as an act of retaliation" because it was later removed by Coke United after the plaintiff's complaint led the human resources department to investigate Clinkscales's inconsistent application of the company's tardy policy. Plaintiff argues that the write-up should be considered as retaliation for his complaint of race discrimination in early

January 2010[7] in regards to the meeting where Lane accused route salesmen of theft. However, as the Court determined in its response to Objection 10, there is no evidence that the plaintiff alleged racial discrimination when he complained about that meeting. Therefore, the warning cannot be considered to be retaliation.

19.     Plaintiff objects to the magistrate's recommendation of summary judgment on plaintiff's retaliation claim in association with his termination. The plaintiff again contends that, on the basis of temporal proximity, his termination could be considered retaliation for Coke United's having learned of the subpoena in his lawsuit against his prior employer. It is rejected on the basis of the same reasoning in ¶4 of the court's response to Objection 4; there is no evidence that Lane and Park were aware of the subpoenas at the time when the decision to terminate Burch was made.

20.     This objection argues that the magistrate wrongly made inferences against the plaintiff when he stated in the report, "on his March 2010 written warning . . . [plaintiff] does not deny that shortages existed, but only that they could have been cause[d] by any number of other employees, including new route salesmen or supervisors, not him." (Doc. 50 at 17). Plaintiff suggests that the magistrate should have concluded more strongly in plaintiff's favor, arguing

---

[7]The plaintiff's objection says "January 5, 2005," but, since the plaintiff was not working for Coke United in 2005, and this alleged complaint of race discrimination has been mentioned before as having been in 2010, the Court assumes the plaintiff meant to write "2010."

> the facts in the light most favorable to the plaintiff are that the money
> shortages in Coke United's vending machines were common and Coke
> United's management knew this, and that any money shortages in his
> vending machines that may have been above what is considered normal
> were not his fault and may have been retaliatory.

(Doc. 58 at 41). Although the plaintiff does point to testimony that money shortages were common at Coke, and that stealing from vending machines by persons other than the assigned route salesmen had ben observed in the past, the plaintiff has not provided evidence to justify the conclusion that, in this case, the money shortages "were not [plaintiff's] fault." The court agrees with the magistrate's determination here.

22.   Plaintiff objects to two factual statements by the magistrate. First, plaintiff says that the meeting called by Lane was not prior to 2009, but, rather, shortly before January 5, 2010. The plaintiff cites two affidavits and a deposition. The affidavits cited by the plaintiff do not address the date on which the meeting took place. The deposition cited says that the plaintiff complained in early January 2010 about that meeting, but says nothing about when the meeting took place. The court has not discovered any other evidence that establishes that the meeting called by Lane took place in early January 2010.

Second, plaintiff objects to the magistrate's statement that the meeting was attended "mostly" by black route salesmen, and contends that the meeting was "almost

exclusively" attended by black route salesmen. This disagreement is trivial; whatever difference in meaning exists between "mostly" and "almost exclusively" is not material in this case.

23.    This objection alleges that "the magistrate incorrectly accepted that [the January 2010 and March 2010 disciplinary warnings] against the plaintiff were actually for failure to properly service machines." The magistrate did not decide the factual disputes as to whether the plaintiff's supervisor told him to let the supply dwindle in the machines at the high school and as to whether he or another party was responsible for money shortages in machines on his former route. Rather, the magistrate accurately summarized the plaintiff's contentions and decided that, even if true, they did not show racial discrimination. The court agrees with the magistrate's recommendation; even taking the plaintiff's factual allegations to be true, these incidents do not indicate that Coke United was treating him a certain way because of his race.

24.    The plaintiff objects to the magistrate's conclusion that the plaintiff failed to show circumstantial evidence linking his disciplinary actions to race. He alleges that there was sufficient circumstantial evidence in the form of the meeting where Lane accused the salesmen of theft, plaintiff's claimed complaint [the existence of which is not supported by the record] to Human Resources alleging that this was race

discrimination, and his write-up on January 5 for failing to fill drink machines at the high school.

The circumstantial evidence must present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "Unless something links the actions to the employee's race, that a decisionmaker singles an employee out does not permit a jury to infer intentional discrimination based on race." *Turner v. Florida Prepaid Coll. Bd.*, 522 F. App'x 829, 833 (11th Cir. 2013). The meeting where Lane made accusations of theft apparently included some white salesmen, as discussed in the response to Objection 21, and so does not give evidence of discriminatory intent. The court has already determined[8] that there is no basis in the record to conclude that the plaintiff made accusations of racial discrimination in response to that meeting; therefore the write-up on January 5 is irrelevant to a finding of discriminatory intent. Therefore, none of these provide even circumstantial evidence of intentional discrimination.

The plaintiff also contends that there is sufficient "circumstantial evidence linking Lane's disciplinary actions to Burch's race" to justify a finding that those events comprise retaliation. The plaintiff refers only to his write-up for being tardy,

---

[8] *See* Court's analysis of plaintiff's Objection 10 *supra*, pp. 22-23.

and says that this was retaliation for making complaints against Lane for race discrimination. As the Court discusses above in response to Objection 10, there is no evidence from the record that the plaintiff accused Lane of race discrimination when he complained about the meeting. Therefore, there can be no reason for finding retaliation on that basis.

25.     The plaintiff next argues that "[t]he Magistrate erred in requiring Burch to be able to point to a caucasian route salesman with a similar disciplinary history because given all the various discriminatory acts against him no comparator was available." (Doc. 58 at 51). The court first notes that the magistrate did not <u>require</u> anything. He merely noted, correctly, that there was no comparator cited, writing:

> Plaintiff does not contend that he did not fail to service the machines for which he was disciplined. With respect to his January 2010 written warning, he contends instead that he was justified in failing to service the machines at the high school because he was instructed by his supervisor to allow the supply to dwindle. On his March 2010 written warning for money shortages in the machines on his former route (Route 29), he does not deny that shortages existed, but only that they could have been cause by any number of other employees, including new route salesmen or supervisors, not him. As to his April 2010 two-day suspension for failing to service machines at ACIPCO, he asserts that he was inadequately trained on the route and was not provided with help in finding all of the machines. <u>He does not argue that Caucasian employees were treated differently or better in similar circumstances. Indeed, plaintiff acknowledges that he cannot point to comparators with similar disciplinary circumstances</u>.

(Doc. 50 at 17). Part of the plaintiff's *prima facie* case requires him to show that he was "treated less favorably than a similarly situated employee outside of his protected

class." *Burke–Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir.2006).

The magistrate correctly pointed out that the plaintiff had not made such a showing.[9]

26. The plaintiff argues that the "magistrate erred in concluding that the plaintiff did not argue that he did not violate company policy by leaving the premises without

---

[9] The plaintiff argues:

> [v]iewing the facts in the light most favorable to Burch it is not surprising that there would not be a comparator because of the numerous retaliations against him and because he was treated so differently than others, including being sent to ACIPCO Route 28 with the intent that he would fail there, and steps, such as inadequate training, were intentionally taken to cause him to fail, he was caused to initially fail there, he was unfairly written up, and then a "guideline" rule of Coke United's, which historically was not applied to route salesmen at all, was applied for the very first time to Burch. In this way, Coke United precluded the existence of anyone with a similar disciplinary history.

(Doc. 58 at 51-52) (footnotes omitted). The court notes that the magistrate's opinion was limited only to the warnings cited, and correctly noted that no comparators were cited. The court also notes that the Eleventh Circuit has acknowledged that:

> [e]ven if a plaintiff cannot point to a similarly situated comparator employee who was treated more favorably, however, she may in some cases create a "triable issue concerning the employer's discriminatory intent" by showing a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."

*Turner v. Florida Prepaid Coll. Bd.*, 522 F. App'x 829, 832 (11th Cir. 2013) (quoting *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011) (internal quotation marks omitted)). After finding that there was no comparator, the magistrate also considered whether a "convincing mosaic of circumstantial evidence" had been shown.

permission." Plaintiff insists that "the facts in the light most favorable to him were that the company really had no such policy." This objection is essentially duplicative of Objection 6, and is rejected for the same reasons.

27.    The plaintiff next argues that,

> The Magistrate also erred in concluding that "the fact that both African American and Caucasian route salesmen [left without the permission of their supervisors] undermines any inference of discrimination with respect to plaintiff, because it would not with regard to plaintiff's retaliation claims for prior protected activity."

(Doc. 58 at 52). This statement, which incorrectly quotes the magistrate, makes no sense. However, elsewhere in this section of the plaintiff's argument he writes: "That African American and Caucasian route salesmen left the premises without the permission of their supervisors and were not terminated strengthens Burch's argument that he was retaliated against for his prior protected activity." (Doc. 58 at 52). Apparently the plaintiff is complaining that the magistrate erred when he failed to find retaliation.

The court notes that the section of the recommendation to which the plaintiff objects was not addressing the retaliation claims. It only addressed the discrimination claims. The magistrate wrote:

> [The p]laintiff does not argue that he did not violate company policy by leaving the premises without permission. Plaintiff's evidence may suggest that he was treated harshly or unfairly, but it does not support an inference that the reason for his "unfair" treatment was based upon his

race. *See, e.g., Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (plaintiff's "bald assertion" that he was not treated as well as other employees is insufficient to show discrimination). Unfair treatment "absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII. *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995). Although there is evidence that other employees, including black and white route salesmen, left the premises for lunch and other personal errands and were not terminated, the evidence fails to show that they did so without permission or that they did not receive some other, lesser discipline, or that their supervisors were aware they had left. Even assuming they did so without permission and their supervisors knew it and still they received no punishment, the fact that both African American and Caucasian route salesmen did it undermines any inference of discrimination with respect to plaintiff. Plaintiff's disciplinary history at that point was already problematic, perhaps leaving him with little room for error.

Also, the evidence is undisputed that when plaintiff's supervisor asked him later where he had been, plaintiff replied at least twice that he did not know what the supervisor was talking about. Only after an investigation by Pounders and Lane revealed that plaintiff left the premises did he admit having done so. Clearly, Pounders and Lane believed that plaintiff was not being truthful with them. Even if plaintiff truly did not know what Pounders was talking about, there is no evidence that Pounders and Lane did not have an honest belief that plaintiff was not being truthful.

In sum, plaintiff's Title VII claim of race discrimination based upon his termination for leaving the work premises must fail because plaintiff has failed to identify a proper comparator and has failed to provide a "convincing mosaic" of discrimination.

(Doc. 50 at 18-19). The magistrate's recommendation on this issue was sound and correct under *de novo* consideration.

28.    The plaintiff next argues that

> Viewing the facts in the light most favorable to the plaintiff, the
> Magistrate erred in insinuating that Burch may have lied about leaving
> the premises, and holding there was no evidence that Pounders and Lane
> did not have an honest belief that plaintiff was not being truthful.

(Doc. 58 at 53). The plaintiff argues that there is evidence "that Burch did not

understand" what he was being asked when he was questioned about leaving the plant

and that was why, on at least two occasions, he stated that "he did not know what

[Pounders] was talking about." (Doc. 58 at 55). In other words, the plaintiff is arguing

that the magistrate, instead of "insinuating" that the plaintiff lied to Pounders, should

have found that the plaintiff merely was confused.

The plaintiff's argument misses the point. It is true that "[o]n summary

judgment, we have written that the 'work rule' defense is arguably pretextual when

a plaintiff submits evidence . . . that she did not violate the cited work rule." *Damon*

*v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999).

However,

> This framework, however, does not vitiate a plaintiff's ultimate burden
> to prove by a preponderance of the evidence that an employer terminated
> the plaintiff based on a discriminatory motive. An employer who fires an
> employee under the mistaken but honest impression that the employee
> violated a work rule is not liable for discriminatory conduct.

*Damon*, 196 F.3d at 1366, n. 3 (11th Cir. 1999); *see also, Moore v. ITT Technical*

*Inst.*, 226 F. App'x 869, 871 (11th Cir. 2007) ("'An employer who fires an employee

under the mistaken but honest impression that the employee violated a work rule is not

liable for discriminatory conduct.'") (quoting *Damon*). Even if the decisionmaker in this case was mistaken, the plaintiff has presented no evidence that the decisionmaker did not honestly believe that the plaintiff had lied.

29.   Finally, the plaintiff argues conclusorily that

> [t]he Magistrate erred in dismissing all of plaintiff's discrimination claims except for his retaliation claim for his April 12, 2010 suspension because the plaintiff has presented a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

(Doc. 58 at 57). This underdeveloped argument fails to discuss at all how the "mosaic" was created. For that reason, and for all the reasons previously stated in this opinion, the objection is without merit.

## IV.   CONCLUSION

Based on the foregoing, the defendant's objection will be **SUSTAINED** to the extent that it argues that there is no genuine issue of material fact disputing that the plaintiff's suspension was not in retaliation for his protected activities. Otherwise, the objections will be **OVERRULED**. By separate order, summary judgment will be **GRANTED** to the defendant.

**DONE** and **ORDERED** this the 30th day of September, 2014.


**VIRGINIA EMERSON HOPKINS**
United States District Judge